IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**Northern Division**

| | |
|---|---|
| **TAMMY NOBLES,** as an individual, and as the successor in interest to and representative of the Estate of Decedent Kayla Hamilton,<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | Civil Action No. |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

Comes Now, Tammy Nobles, Individually, and as Successor in Interest to and as Representative of the Estate of Kayla Hamilton, Deceased ("Plaintiff") and files this Complaint for Damages against the United States of America ("Defendant USA") pursuant to the Federal Tort Claims Act.

**Parties**

1. Plaintiff is a resident of Virginia. She is the surviving mother of Decedent Kayla Hamilton.

2. Plaintiff is the proper party under Maryland law to bring a claim for wrongful death of her daughter, Kayla Hamilton.

3. Defendant USA may be served with process by delivering a copy of the Summons and Complaint via certified mail to each of the following:

   a. Erek L. Barron, United States Attorney for the District of Maryland, address: 36 S. Charles St., Baltimore, MD 21202-2692, Attn: Civil Process Clerk;

1

      b.        Merrick Garland, Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530-0001, Attn: Civil Process Clerk;

      c.        Department of Homeland Security, Office of the General Counsel, 245 Murray Lane, SW, Mail Stop 0485, Washington, D.C. 20528-0485; and

      d.        Department of Health and Human Services, Office of the General Counsel, 200 Independence Avenue, S.W., Room 713-F, Washington, D.C. 20201.

## Jurisdiction and Venue

4. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* & 1346 *et seq.* for money damages for death that was caused by institutional failures and the negligent and wrongful acts or omissions of one or more employees of Defendant USA (including any employee or service personnel charged with implementing and making sure existing policies and procedures were followed, any charged with ensuring policies and procedures were adequate and/or responsible for making any necessary revisions or modifications to such policies and procedures) while acting within the course and scope of their office or employment under circumstances where Defendant USA, if a private person, would be liable to Plaintiff in accordance with Maryland law.

5. This action arises out of an incident that occurred in Harford County, Maryland, the same county where Decedent resided. Harford County is in the District of Maryland.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) because the incident occurred in Harford County, Maryland.

# Facts

7.  On July 27, 2022, Kayla Hamilton ("Ms. Hamilton"), a twenty-year-old autistic woman, was raped, strangled with a phone cord, and murdered in Aberdeen, Maryland by Walter Javier Martinez ("Martinez"). Martinez, a minor at the time, was associated with the MS-13 gang in El Salvador. On information and belief, Martinez had a prior criminal record in El Salvador.

8.  Due to the operational negligence of employees at Department of Homeland Security (DHS) and Department of Health and Human Services ("DHHS"), Martinez was permitted to enter the United States illegally in March 2022. The operational negligence of one or more employees of DHS and DHHS includes but is not limited to the following:

   a.  DHS and DHHS employees negligently, recklessly, and/or egregiously failed to follow proper DHS and/or DHHS protocols in lifting the shirt of Martinez to visually inspect for gang-related tattoos. Had the employees performed a rudimentary visual inspection of Martinez's body, they would have seen MS-13 gang-related tattoos on his body which would have disqualified Martinez from entering the United States and Ms. Hamilton would be alive today.

   b.  DHS and DHHS employees negligently, recklessly, and/or egregiously failed to make a simple phone call to the El Salvador government to verify if Martinez was on an MS-13 gang-affiliation list. Had they done so, El Salvador government officials would have confirmed that Martinez was a known MS-13 gang member with a prior criminal history. Martinez would have then been disqualified from entering the United States and Ms. Hamilton would be alive today.

   c.  DHS and DHHS employees violated clearly articulated DHS protocol requiring a minor to be placed with a "verified" relative before entering the United States.

DHS employees negligently, recklessly, and/or egregiously failed to verify a legitimate family member of Martinez before allowing him to enter the United States. This was borne out by inconsistencies in DHS records regarding the identity of the relative and by Martinez ultimately and shockingly being placed in a foster home by authorities.

        d.      DHS and DHHS supervisors negligently, recklessly, and/or egregiously trained and supervised DHS employees to properly screen minors attempting to enter the United States from El Salvador. This operational negligence was the proximate cause of Ms. Hamilton's rape and murder.

9. On July 27, 2022, at approximately 5:13 p.m., officers from Aberdeen Police Department and paramedics from Aberdeen Fire Department responded to the unit block of E. Inca Street for a cardiac arrest.

10. Upon arrival, the officers and paramedics located Ms. Hamilton. Ms. Hamilton had only recently moved to the area with her boyfriend. Officers and paramedics found Ms. Hamilton was deceased and suffering from injuries consistent with a homicide – she was bound at the wrists and there was a phone charging cord wrapped tightly around her neck and mouth. Officers secured the scene and detectives from the Criminal Investigations Division responded to the scene and assumed the investigation. The Office of the Chief Medical Examiner determined the death to be a homicide by strangulation.

11. The investigation conducted by Aberdeen Police Department Criminal Investigations Division in conjunction with DHS, Maryland State Police Homicide Unit, and U.S. Immigration and Customs Enforcement showed that Ms. Hamilton was raped and strangled to death by a sixteen-year-old Hispanic male that broke into her mobile home. After raping and killing Ms. Hamilton, the individual stole her money and cell phone and left the scene. DNA

evidence collected from the crime scene led to the arrest of the now seventeen-year-old Hispanic male.

12. That assailant was determined to be Martinez, an undocumented non-citizen from El Salvador who was sixteen-years old at the time. U.S. Immigration and Customs Enforcement verified Martinez was listed in El Salvador as an MS-13 gang member with a prior criminal history. This was later confirmed by Martinez's own defense counsel.

13. On January 15, 2023, Martinez was arrested and charged with first degree murder. On August 21, 2024, he pleaded guilty to first degree murder.

**FTCA Conditions Precedent**

14. Pursuant to 28 U.S.C. § 2675(a), Plaintiff timely presented her claim to the United States by submitting Form SF-95 to DHS, via FedEx Priority Overnight to Office of the General Counsel – U.S. Department of Homeland Security, 245 Murray Lane, SW, Mail Stop 0485, Washington, D.C. 20528-0485 on October 9, 2023. Notification of delivery on October 10, 2023 was later received from FedEx.

15. Pursuant to 28 U.S.C. § 2675(a), Plaintiff timely presented her claim to the United States by submitting Forms SF-95 to DHHS, via FedEx Priority Overnight to Office of the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Room 713-F, Washington, D.C. 20201 on October 9, 2023. Notification of delivery on October 10, 2023 was later received from FedEx.

16. Receipt of the claim by DHS on October 31, 2023 was acknowledged by attorneys Michael Aguirre and Dominique Villareal, U.S. Customs and Border Protection, Office of the Chief Counsel.

17. Receipt of the claim by DHHS on October 10, 2023 was acknowledged FedEx Proof of Delivery which showed it was signed by K. Kenny in the mailroom.

18. As of September 23, 2024, more than six months have elapsed since the claim was presented to Defendant USA and Defendant USA has not made a final disposition of Plaintiff's claims. Accordingly, Plaintiff's claims are deemed denied pursuant to 28 U.S.C. § 2675(a).

19. Plaintiff has exhausted her administrative remedies under the Federal Tort Claims Act and has fully complied with the statutory prerequisites for bringing this tort action against Defendant USA.

## **Count I: Negligence**

20. The proceeding paragraphs are incorporated and re-alleged as if fully set forth herein.

21. Ms. Hamilton's death was caused in whole by the institutional failures and operational negligence of DHS and DHHS in that these entities negligently, recklessly, carelessly, and/or egregiously failed to follow proper protocol and policies for minors detained at the border as required by law and which would have prevented and barred Martinez from being able to brutally assault and murder Ms. Hamilton.

22. Defendant USA owed Ms. Hamilton a special duty in light of her murderer—Martinez—having a criminal propensity as evidenced by his prior criminal history in his native El Salvador and his participation as a member of the MS-13 gang.

23. The House of Representatives Judiciary Committee conducted an investigation into the failures of Defendant USA in allowing Martinez into the United States.

24. Martinez, who murdered Ms. Hamilton, was allowed to enter the United States as an unaccompanied alien child in March 2022 at the Rio Grande Valley Sector of the United States-Mexico Border ("the border"). The Judiciary Committee's investigation determined that Defendant USA insufficiently vetted Martinez and ignored key warning signs about his propensity for violence. Among the ignored warning signs were the following:

    a. Years before entering the United States, Martinez was arrested in El Salvador for "illicit association" with MS-13, a dangerous gang. He had a prior criminal record in El Salvador;

    b. Martinez had gang tattoos, something that was not disclosed in his DHS file or the file held by the Department of Health and Human Services Office of Refugee Resettlement ("ORR").

25. Here, DHS and DHHS failed to perform the most basic measures to ensure that Martinez, an undocumented immigrant entering the United States was not a dangerous criminal or known gang member. Had DHS and DHHS vetted Martinez according to policy, he would have been placed in a secure facility for criminal unaccompanied minors rather than being placed with an alleged first cousin whom he escaped from. At no time should Martinez have been roaming free in Aberdeen, Maryland.

26. Martinez's gang affiliation was never discovered by DHS because of DHS's operational negligence. It was Aberdeen Police Department officers that quickly found the association. Ironically, Martinez told DHS employees that he had left El Salvador to escape gang-related threats. DHS and DHHS also missed Martinez's gang-related tattoos, further showing operational negligence on the part of DHS and DHHS when it should have been acting

for the safety of American citizens and showing a complete failure to follow vetting protocol when Martinez was detained by DHS and DHHS.

27. Further operational negligence was shown in the handling of Martinez's placement in a foster home with children while his homicide charge was pending and after his affiliation with MS-13 gang was known.

28. Furthermore, DHS and DHHS failed to investigate or vet contradicting narratives provided by Martinez. Martinez's sponsors are listed as a male first cousin with no childcare experience, as a female aunt, and as his father. Meanwhile, Martinez had also told DHS and DHHS officials that he had no relationship with his father. Also, the file notes Martinez had no siblings while also stating he had a half-brother.

29. DHS and DHHS utterly and carelessly failed in their obligations which allowed the tragic murder of Ms. Hamilton to occur.

30. Had DHS and DHHS done as required, Martinez would not have been free roaming the streets of Maryland and would not have been near Ms. Hamilton's home. Given Martinez's known affiliation with the MS-13 gang in El Salvador and his prior arrests and criminal history, it was reasonably foreseeable that he would commit a violent crime in the United States.

31. The utterly careless and reckless failures of DHS and DHHS described above resulted in numerous missed opportunities for various government entities to prevent further violence by Martinez.

32. Based upon the foregoing, the death of Ms. Hamilton was caused in whole by the negligence, recklessness, and/or carelessness of Defendant USA, through DHS's and DHHS's failure to adhere to the regulations, policies, procedures, and/or guidelines of their respective

departments in proper protocol related to the detention of minors at the border, thereby allowed Martinez to roam free throughout the streets of Maryland and ultimately brutally rape and murder Ms. Hamilton.

33. Had DHS and DHHS complied with its own operational and mandatory regulations, Martinez would have been barred from being free to roam the streets of Maryland.

34. DHS and DHHS created a dangerous condition to the public, specifically to Ms. Hamilton, through its operational negligence, including but not limited to, its failure to follow clearly enumerated protocol related to the vetting and detention of minors at the border.

35. Based upon the foregoing, the death of Ms. Hamilton was caused in whole by the negligence, recklessness, and/or carelessness of Defendant USA, through DHS and DHHS, in breaching the duty of care owed to the public generally, and to Ms. Hamilton specifically, by its failure to follow its own policies and procedures as they relate to the detention of minors at the border.

36. Based upon the foregoing, the death of Ms. Hamilton was caused in whole by the negligence, recklessness, and/or carelessness of Defendant USA, through DHS and DHHS, unleashing on the public an individual with dangerous propensities that should have remained in custody.

37. Based upon the foregoing, the death of Ms. Hamilton was caused in whole by the negligence, recklessness, and/or carelessness of Defendant USA, through DHS and DHHS, all of which, individually and/or jointly, proximately caused in whole the subject assault and murder of Ms. Hamilton and Plaintiff's damages set forth herein.

## Count II: Wrongful Death

38. The preceding paragraphs are incorporated and re-alleged as if fully set forth herein.

39. Plaintiff brings this action as the surviving wrongful death beneficiary of Ms. Hamilton.

40. This action is brought pursuant to Md. Code Ann. Cts. & Jud. Proc. § 3-904, commonly referred to as the "Wrongful Death Act," and pursuant to the terms and provisions of Md. Code Ann. Cts. & Jud. Proc. §6-401, known as the "Survivor's Act," and any and all other applicable laws including the common law of the State of Maryland.

41. No administration of the estate is pending, and no administration is necessary. Further, no administrator has been appointed in this action.

42. As a direct and proximate result of the negligent conduct and failures of Defendant USA, Ms. Hamilton died, and Plaintiff has suffered damages.

43. As the surviving parent of Ms. Hamilton, Deceased, Plaintiff is the statutory beneficiary of Decedent Ms. Hamilton.

44. By reason of the brutal rape and murder of Ms. Hamilton, Plaintiff has suffered past and future pecuniary loss, meaning the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Plaintiff in reasonable probability, would have received from Ms. Hamilton had she lived.

45. By reason of the brutal rape and murder of Ms. Hamilton, Plaintiff has suffered past and future loss of companionship and society that Plaintiff, in reasonable probability, would have received from Ms. Hamilton had she lived.

46. By reason of the brutal rape and murder of Ms. Hamilton, Plaintiff has suffered past and future mental anguish, meaning the emotion pain, torment, and suffering experienced by Plaintiff because of the death of Ms. Hamilton.

47. The Estate of Decedent Kayla Hamilton is also entitled to bring action on behalf of Decedent Ms. Hamilton for the physical pain and mental anguish she was caused to endure from the time Martinez attacked her until the time of her death as a result of the negligence of Defendant USA.

## No Applicable Exceptions to FTCA

48. None of Plaintiff's claims asserted herein are subject to any of the exceptions to sovereign immunity found in 28 U.S.C. § 2860.

49. Defendant USA, including DHS and DHHS and its employees, failed to meet the required obligations as they relate to the detention of minors at the border as described herein.

50. Defendant USA, including DHS and DHHS and its employees, failed to exercise due care in the execution of its duties under the required obligations related to the detention of minors at the border described herein.

51. The obligations described herein do not involve discretionary functions or duties.

## Damages and Relief Requested

52. WHEREFORE, Plaintiff prays and respectfully demands verdict and judgment as follows:

   a. That summons and process issue and Defendant USA be served with this Complaint as required by law and that Defendant USA be required to appear and answer;

   b. That Plaintiff's claims under the Federal Torts Claims Act against Defendant USA be tried by a judge sitting as the fact finder;

      c.      That Plaintiff be awarded damages sought herein in an amount determined by the trier of fact;

      d.      That Defendant USA be charged with all costs and other expenses attributable to this action to the maximum extent permitted by law under the Federal Torts Claims Act; and

      e.      That Plaintiff be granted such other and further relief as is supported by the evidence and authorized by the law that the Court may deem appropriate.

| Dated: October 7, 2024 | Dated: October 7, 2024 |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| /s/ BRIAN E. CLAYPOOL | *(signature)* |
| Brian E. Claypool (*pro hac vice* pending) | Daniel L. Cox |
| Attorney for Plaintiff | The Cox Law Center, LLC |
| Fed. Bar No. | Attorney for Plaintiff |
| Claypool Law Firm | Fed. Bar No. 28245 |
| 4 E. Holly Street, Suite 201 | P.O. Box 545 |
| Pasadena, CA 91103 | Emmitsburg, MD 21727 |
| Telephone: (626) 602-1333 | Telephone: (410) 254-7000 |
| E-mail: brian@claypoollawfirm.com | E-mail: dcox@coxlawcenter.com |