# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TAMMY NOBLES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:25-cv-343 |
| | § | |
| UNITED STATES, | § | |
| | § | |
| Defendant. | § | |

## UNITED STATES' MOTION TO DISMISS

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

KIRSTEN L. WILKERSON
Director, Torts Branch

STEPHEN R. TERRELL (CA Bar No. 210004)
Fed. ID No. 3906717
Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044

# TABLE OF CONTENTS

MOTION ......................................................................................................... 1

I.   SUMMARY ............................................................................................ 1

II.  STANDARD OF REVIEW .................................................................... 2

III. RELEVANT ALLEGATIONS AND JURISDICTIONAL FACTS ............... 4

IV.  ARGUMENT ........................................................................................... 9

    A.    The FTCA's Discretionary Function Exception Bars Plaintiff's
        Claims. ............................................................................................... 9

        1.    Border Patrol had policy-based, discretionary authority in how
                to screen Martinez as a UAC. .................................................. 12

        2.    Border Patrol was required to transfer Martinez to ORR
                custody. ..................................................................................... 17

        3.    The discretionary function exception bars Plaintiff's challenge
                to ORR's decision to release Martinez to a sponsor. ................ 20

        4.    The discretionary function exception applies to ORR's approval
                of Ms. D.C.M. as a sponsor. ..................................................... 25

        5.    The discretionary function exception bars Plaintiff's negligent
                training and supervision claim. ................................................. 27

    B.    The FTCA's Independent Contractor Exception Bars Any Claims
        Arising Out of Compass Connections' Acts or Omissions. ................ 28

    C.    Independently, the United States Owed No Duty of Care to Plaintiff's
        Decedent. ........................................................................................... 29

V.   CONCLUSION ...................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Allen v. United States*, 816 F.2d 1417 (10th Cir. 1987) ..........................................21

*Berkovitz v. United States*, 486 U.S. 531(1988)..........................................................9

*Boren v. Texoma Med. Ctr., Inc.*, 258 S.W.3d 224 (Tex. Ct. App. 2008) .................31

*Brownback v. King*, 592 U.S. 209 (2021) ....................................................................3

*Buchanan v. United States*, 915 F.2d 969 (5th Cir. 1990).........................................11

*Burkhart v. Wash. Metro. Area Trans. Auth.*, 112 F.3d 1207 (D.C. Cir. 1997) ........27

*Campos v. United States*, 888 F.3d 724 (5th Cir. 2018)..............................................3

*CNA v. United States*, 535 F.3d 132 (3d Cir. 2008) ..................................................27

*Dalehite v. United States*, 346 U.S. 15 (1953) ..........................................................11

*Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307 (5th Cir. 2009)..................24

*Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016 (C.D. Cal. 2010) ..................................................................................................................14

*FDIC v. Meyer*, 510 U.S. 471 (1994)...........................................................................3

*Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995) .............. 15, 16

*Flax v. United States*, 847 F. Supp. 1183 (D.N.J. 1994) ...........................................14

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ..........................................................20

*Flynn v United States*, 902 F.2d 1524 (10th Cir. 1990) ............................................27

*Freeman v. United States*, 556 F.3d 326 (5th Cir. 2009)...........................................14

*Gen. Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998)....................15

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990) ...................30

*In re Katrina Canal Breaches Litigation*, 696 F.3d 436 (5th Cir. 2012) .......... 15, 16

*Joiner v. United States*, 955 F.3d 399 (5th Cir. 2020)................................................3

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008) ....................................................3

*Lively v. United States*, 870 F.2d 296 (5th Cir. 1989) ..............................................11

*Logue v. United States*, 412 U.S. 521 (1973)....................................................... 28, 29

*Lopez v. ICE*, 455 F. App'x 427 (5th Cir. 2011) ......................................................16

*Loughlin v. United States*, 393 F.3d 155 (D.C. Cir. 2004).......................................21

*M.D.C.G. v. United States*, 956 F.3d 762 (5th Cir. 2020) ................................. 10, 27

*McCloskey v. Mueller*, 385 F. Supp. 2d 74 (D. Mass. 2005) ...................................14

*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980) ..........................3

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) ..............................................27

*Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983)................................. 30, 31

*Perry v. S.N.*, 973 S.W.2d 301 (Tex. 1998) ..............................................................30

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) .........................................4

*Richards v. United States*, 369 U.S. 1 (1962) ..........................................................30

*Rodriguez v. Spencer*, 902 S.W.2d 37 (Tex. Ct. App. 1995)...................................31

*Smith v. Reg'l Transit Auth.*, 756 F.3d 340 (5th Cir. 2014)......................................4

*Spotts v. United States*, 613 F.3d 559 (5th Cir. 2010) ..............................................10

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502 (5th Cir. 2015).........................................................................................................................4

*Suter v. United States*, 441 F.3d 306 (4th Cir. 2006) ...............................................14

*Timberwalk Apts., Partners v. Cain*, 972 S.W.2d 749 (Tex. 1998).........................31

*Tsolmon v. United States*, 841 F.3d 378 (5th Cir. 2016) .........................................13

*United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627 (Tex. 2023).......................30

*United States v. Gaubert*, 499 U.S. 315 (1991) ................................................ passim

*United States v. Varig Airlines*, 467 U.S. 797 (1984) ..............................................10

*VIA Metro. Transit v. Meck*, 620 S.W.3d 356 (Tex. 2020) .......................................31

*Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013) ...........................29

**Statutes**

6 U.S.C. § 279 ................................................................................ 6, 18, 28

8 U.S.C. § 1232 ....................................................................................... passim

8 U.S.C. § 1522 ............................................................................................28

28 U.S.C. § 2671 ..........................................................................................28

28 U.S.C. § 2674 ..........................................................................................30

28 U.S.C. § 2680 ....................................................................................3, 9, 11

31 U.S.C. § 6305 ..........................................................................................28

**Other Authorities**

Restatement (Second) Torts § 314A ...........................................................31

**Rules**

Fed. R. Civ. P. 12..........................................................................................3

**Regulations**

8 C.F.R. § 236.3 ...........................................................................................19

45 C.F.R. § 410.101 ......................................................................................20

45 C.F.R. § 410.203 ................................................................................ 22, 24

45 C.F.R. § 410.205 ......................................................................................24

45 C.F.R. § 410.301 ......................................................................................26

# GLOSSARY

| | |
|---|---|
| DHS | Department of Homeland Security |
| FRP | Family Reunification Program |
| FTCA | Federal Tort Claims Act |
| FPQ2 | Federated Person Query 2 |
| HHS | Department of Health and Human Services |
| MRGO | Mississippi River Gulf Outlet |
| NEPA | National Environmental Policy Act |
| ORR | Office of Refugee Resettlement |
| UAC | Unaccompanied Alien Child |

The United States hereby moves to dismiss this action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Federal Tort Claims Act's ("FTCA") discretionary function exception bars Plaintiff's claims based on the allegedly negligent acts or omissions of employees of the United States at issue in Plaintiff's Complaint. Further, to the extent Plaintiff premises her claims on acts or omissions of Compass Connections f/k/a BCFS Health and Human Services ("Compass Connections"), the FTCA's independent contractor exception bars those claims. Finally, Plaintiff fails to allege facts that establish that the United States owed a duty of care to Plaintiff's decedent under applicable state tort law. Accordingly, Plaintiff's claims fail as a matter of law and should be dismissed.

## I.    SUMMARY

The United States is not liable under the FTCA for the murder of Kayla Hamilton, Plaintiff's daughter. Walter Javier Martinez ("Martinez"), the murderer, bears sole legal responsibility for Ms. Hamilton's killing. The fact that the United States Border Patrol ("Border Patrol") encountered Martinez after he illegally crossed the United States-Mexico border into Texas, processed him as an "unaccompanied alien child" ("UAC"), and transferred custody of him to the United States Department of Health and Human Service's ("HHS") Office of Refugee Resettlement ("ORR") does not give rise to tort liability on behalf of the United States.

Border Patrol followed applicable federal immigration statutes, regulations, and policies when it apprehended Martinez, determined that he was a UAC, and transferred him to ORR custody.  ORR in turn followed applicable federal regulations and policies when it placed Martinez with Compass Connections f/k/a BCFS Health and Human Services ("Compass Connections"), a private facility with a cooperative agreement with ORR.  Compass Connections, which provided shelter and services to Martinez and identified a sponsor for him, is not an employee of the federal government.  Rather, Compass Connections is an independent contractor, and the United States is not liable for its acts or omissions under the FTCA.  Finally, ORR's decision to approve Compass Connections' release of Martinez to an adult first cousin as a sponsor was a discretionary decision that Plaintiff cannot challenge in this FTCA action.

Alternatively, and independently, the United States did not owe a duty under applicable state tort law to protect Ms. Hamilton from Martinez's criminal conduct. Accordingly, Plaintiff cannot state a claim against the United States under the FTCA and this Court lacks subject matter jurisdiction.

## II.    STANDARD OF REVIEW

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.  Sovereign immunity is jurisdictional in nature.  Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's

jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The

FTCA is a limited waiver of sovereign immunity, *Joiner v. United States*, 955 F.3d

399, 403 (5th Cir. 2020), subject to numerous exceptions, 28 U.S.C. § 2680. If, as

here, any of the exceptions to the limited waiver of sovereign immunity in the

FTCA are at issue, Plaintiff bears the burden of establishing that the exception does

not apply. *Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018). Also, to

invoke the FTCA's limited waiver of sovereign immunity, Plaintiff must plead and

prove that "the United States 'would be liable to the claimant' as 'a private person'

'in accordance with the law of the place where the act or omission occurred.'"

*Meyer*, 510 U.S. at 477. This element is jurisdictional, and failure to "plausibly

allege that 'the United States, if a private person, would be liable to the claimant

under state law'" warrants dismissal for lack of subject matter jurisdiction.

*Brownback v. King*, 592 U.S. 209, 218 (2021).

The United States may move to dismiss an action for lack of subject matter

jurisdiction. Fed. R. Civ. P. 12(b)(1). At all stages of litigation, Plaintiff bears the

burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit

Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When assessing a motion to dismiss for

lack of subject matter jurisdiction, the Court may begin by accepting "the well-pled

factual allegations of the complaint as true and view them in the light most

favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

The moving party may raise lack of subject matter jurisdiction through "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When presented with evidence extraneous to the complaint, the Court can resolve factual disputes "to the extent necessary to determine jurisdiction." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 346 (5th Cir. 2014). Once the moving party brings into question the Court's subject matter jurisdiction, Plaintiff "must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain [her] burden of proof." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

## III.    RELEVANT ALLEGATIONS AND JURISDICTIONAL FACTS

In the early morning hours of March 23, 2022, Border Patrol agents encountered Martinez as a member of a large group of migrants at the United States-Mexico border near Roma, Texas. I-213, **Ex. A**; e3 Roll Call Report, **Ex. B**. The agents determined that Martinez had illegally entered the United States, arrested him, and transported him to the Rio Grande Valley Sector Centralized Processing Center in Donna, Texas. I-213.

Martinez told Border Patrol agents that he was a citizen and national of El

Salvador.  *Id.*  Martinez had in his possession a cell phone, a cell phone charger, and his birth certificate.  Resident Personal Property & Funds List, **Ex. C**.  Border Patrol agents fingerprinted and interviewed Martinez.  I-213, Unaccompanied Child Screening Addendum ("CBP-93"), **Ex. D**.

Martinez told Border Patrol agents that he was 16 years old, consistent with the information on his birth certificate.  CBP-93.  He told them that he left El Salvador "[b]ecause the gangs threatened me to join them."  *Id*.  He also told the agents that he feared "the gangs" would harm him if he returned to El Salvador, and that he did not want to return to El Salvador because he was "afraid of them." *Id.*

Border Patrol agents checked Martinez's biographical information to look for any matching information in the Federated Person Query 2 ("FPQ2") system by using the Border Patrol's e3 system.  I-213.  The FPQ2 system queries various federal law enforcement and information databases.  FPQ2 Information Sheet, **Ex. E**.  Specifically, FPQ2 queries: IDENT, the Department of Homeland Security's ("DHS") Automated Biometric Identification System; NGI, the Federal Bureau of Investigation's Next Generation Identification biometric database; ABIS, the Department of Defense Automated Biometric Identification System; TECS (the Treasury Enforcement Communications System); NCIC, the Federal Bureau of Investigation's National Crime Information Center database; EARM, the

ENFORCE Alien Removal Module; and CIS, DHS's Central Index System database.  *Id.*  The FPQ2 query for Martinez did not reveal any prior records or negative information.  I-213; Database Results, **Ex. F**.

Border Patrol agents notified the El Salvador consulate of Martinez's apprehension.  I-213.  Border Patrol agents issued to Martinez a Notice to Appear, Notice to Appear, **Ex. G**, and an arrest warrant, Warrant for Arrest of Alien, **Ex. H**.  Because Martinez met the definition of a UAC under 6 U.S.C. § 279(g)(2), Border Patrol was required to transfer him to ORR custody pursuant to 8 U.S.C. § 1232(b)(3).  Notice of Custody Determination, **Ex. I**.  ORR found a placement for Martinez at Compass Connections, a private facility that provides, among other things, shelter and services to UACs through its cooperative agreement with ORR.

 On the evening of March 23, 2022, Martinez arrived at the Compass Connections facility in Harlingen, Texas.  CBP Manifest Report, **Ex. J**; Male Intake Packet Face Sheet, **Ex. K**.

Under the cooperative agreement, ORR agreed to "confirm [Compass Connection's] project plan;" participate in status meetings; provide training and technical assistance "as needed;" inform Compass Connections of applicable policies, rules, and laws; and to review proposed activities, sub-awards, additions or hiring of key personnel, internal policies and procedures, and budget requests.  Cooperative Agreement § IV.H, **Ex. L**.  Compass Connections agreed to provide

6

housing and services to UACs, including to, "identify[ ] information regarding immediate family members, other relatives, godparents or friends who may be residing in the United States and may be able to assist in connecting the child with family members," and "identify relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship when necessary for the release of the UAC." *Id.* § IV.A.

Compass Connections interviewed Martinez on March 24, 2022. During that interview, Martinez stated "he came to the U.S. to escape gang members that assaulted him." 72-Hour Preliminary Service Plan, **Ex. M**. "He denied any affiliation with gangs." *Id.*

Martinez identified to Compass Connections two people within the United States as potential sponsors: J.V.M.A., an unrelated family friend living in Garland, Texas; and D.C.M., an adult first cousin living in Frederick, Maryland. Harvey Decl. ¶ 6, **Ex. N**. Compass Connections contacted both potential sponsors. *Id.*

At the time, the "ORR Children Entering the United States Unaccompanied" policy provided that:

> ORR releases children to a sponsor in the following order of preference: parent; legal guardian; an adult relative (brother, sister, aunt, uncle, grandparent or first cousin); an adult individual or entity designated by the parent or legal guardian (though a signed declaration or other document that ORR determines is sufficient to establish the signatory's parental/guardian relationship); a licensed program willing to accept legal custody; or an adult individual or entity seeking custody when it appears that there is no other likely

alternative to long term ORR care and custody.
Children Entering the United States Unaccompanied Section 2.2.1 (June 7, 2021),
**Ex. O**; *accord* Stipulated Settlement Agreement ¶ 14 in *Flores v. Reno*, No. 85-cv-4544 (C.D. Cal. Jan 17, 1997), **Ex. P**.

Ms. D.C.M. agreed to sponsor Martinez and completed the necessary Family Reunification Program ("FRP") application. Harvey Decl. ¶ 7. Compass Connections performed a background check on Ms. D.C.M. *Id.* This background check included interviewing Ms. D.C.M. by telephone, obtaining a copy of her driver's license and birth certificate, checking her criminal history, confirming her employment status, determining she was not listed on the Department of Justice SMART National Sex Offender Public Website, and confirming her residence and other household members, her relationship to Martinez, and her ability to support Martinez financially. *Id.*

On May 1, 2022, ORR approved Compass Connections' release of Martinez to Ms. D.C.M. *Id.* ¶¶ 6–7. On May 3, 2022, a Compass Connections Transit Porter traveled with Martinez from Harlingen, Texas to Washington Dulles International Airport, in Virginia. *Id.* ¶ 7. At Dulles International Airport, Compass Connections transferred custody of Martinez to Ms. D.C.M. *Id.*

On July 27, 2022, Martinez assaulted and murdered decedent Kayla Hamilton. Compl. ¶ 7 (ECF No. 1).

## IV.    ARGUMENT

### A.    The FTCA's Discretionary Function Exception Bars Plaintiff's Claims.

The United States is not liable under the FTCA for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  The Supreme Court has enunciated a two-part test for determining whether the discretionary function exception bars a claim.  First, courts must determine whether the act "involv[es] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  Pursuant to this first part, courts look to whether "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow. . . ." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Second, if the conduct does involve judgment or choice, courts then look to "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz*, 486 U.S. at 536).  "The basis for the discretionary function exception was Congress' desire to 'prevent judicial second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536–537 (quoting *United States v. Varig Airlines*,

9

467 U.S. 797, 814 (1984)). Thus, the exception protects "governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (citation and internal quotation marks omitted).

It is immaterial whether government employees actually considered various policy considerations because "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *Spotts v. United States*, 613 F.3d 559, 572 (5th Cir. 2010) ("the proper inquiry under prong two is not whether [the employee] in fact engaged in a policy analysis when reaching his decision but instead whether his decision was 'susceptible to policy analysis'"). The focus is on the nature of the conduct, not the employee's subjective thought process. *See M.D.C.G. v. United States*, 956 F.3d 762, 772–73 (5th Cir. 2020) ("whatever [supervisor's] reasons for failing to monitor more closely [subordinate's] whereabouts, his supervisory decisions encapsulate the essence of the discretionary function exception"). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 323.

The discretionary function exception applies even if the government's

conduct was negligent or an abuse of discretion. *Gaubert*, 499 U.S. at 323; *see also Dalehite v. United States*, 346 U.S. 15, 33 (1953) (the discretionary function exception "applies to policy judgments, even to those constituting abuse of discretion."). The relevant question "is not whether the Government acted with due care but whether the Government's conduct was the result of the performance of a discretionary function." *Lively v. United States*, 870 F.2d 296, 298 (5th Cir. 1989); *accord Buchanan v. United States*, 915 F.2d 969, 970–71 (5th Cir. 1990) (explaining that the discretionary function exception "applies regardless of whether the government official has exercised due care").

To address the Supreme Court's two-part test for the discretionary function exception, the Court must first identify the challenged government conduct at issue. The exception applies to claims "based upon" discretionary acts or omissions. 28 U.S.C. § 2680(a). A plaintiff cannot simply point to any allegedly mandatory obligation to avoid application of the exception. A plaintiff must identify a mandatory and specific federal directive that a government employee failed to follow that relates causally to the ultimate harm. Here, Plaintiff's claim arises from the murder of Ms. Hamilton. The challenged conduct at issue is the government's release of Martinez to a sponsor, rather than detaining him in a secure facility pending his immigration proceedings.

Although Plaintiff points to allegedly negligent omissions by the

government prior to its release of Martinez to a sponsor—that is, the alleged failure to properly screen Martinez for gang affiliation—there were no controlling statutes, regulations, or agency policies that mandated that Border Patrol investigate or inspect Martinez for gang affiliation in a specific manner. Rather, because Border Patrol agents retained "element[s] of judgment or choice" in how to inspect and screen Martinez as a UAC, their conduct qualifies as "discretionary" under *Gaubert*.

Even if Border Patrol had violated mandatory and specific directives in investigating or screening Martinez (it did not), the discretionary function exception would still bar Plaintiff's claim. Plaintiff does not allege that Border Patrol's failure to properly screen Martinez for gang affiliation in and of itself was the cause of her harm. Rather what Plaintiff points to as the source of injury—i.e., the acts or omissions that her claims are "based upon"—is ORR's release of Martinez to a sponsor rather than securely detaining him. As set forth below, however, the discretionary function exception shields the government's ultimate decision to release Martinez to a sponsor rather than securely detain him.

### 1. Border Patrol had policy-based, discretionary authority in how to screen Martinez as a UAC.

Border Patrol encountered Martinez after he crossed the border, apprehended him, processed him as a UAC, and transferred him to Compass Connections. Plaintiff does not identify any controlling federal statute, regulation, or agency

policy that prescribed a specific course of conduct for Border Patrol's screening of Martinez for gang affiliation.

The Complaint alleges that Border Patrol failed to lift "the shirt of Martinez to visually inspect for gang-related tattoos." Compl. ¶ 8.a. But Plaintiff does not identify a federal statute, regulation, or agency policy that prescribed a course of visual inspection of UACs for gang affiliation. Moreover, Plaintiff alleges that Border Patrol failed to "make a simple phone call to the El Salvador government to verify if Martinez was on an MS-13 gang-affiliation list." *Id.* ¶ 8.b. Again, Plaintiff does not allege that an applicable federal statute, regulation or agency policy required a phone call to the El Salvador government upon processing Martinez as a UAC.

"'[D]ecisions on when, where, and how to investigate and whether to prosecute' have long been found to be core examples of discretionary conduct for which the United States maintains its immunity." *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016) (citation omitted). The gravamen of Plaintiff's allegations is that Border Patrol should have conducted a different investigation of Martinez and made a law enforcement decision to either securely detain or immediately remove Martinez from the United States.[1] These are inherently

---

[1] As noted below, federal law precluded Border Patrol from removing Martinez as a UAC, but even if immediate deportation were an option, the discretionary function exception would still apply.

discretionary decisions that involve elements of judgment or choice.  Courts have

overwhelmingly found that the discretionary function exception bars claims of

negligent investigation by law enforcement officers.  *See*, *e.g.*, *Suter v. United

States*, 441 F.3d 306, 311–12 (4th Cir. 2006) (discretionary function exception

barred claims arising from allegedly negligent investigation of fraudulent

investment scheme); *Dichter-Mad Family Partners, LLP v. United States*, 707 F.

Supp. 2d 1016, 1051 (C.D. Cal. 2010) (discretionary function exception barred

plaintiffs' challenge to SEC's allegedly negligent investigation of Bernard Madoff);

*McCloskey v. Mueller*, 385 F. Supp. 2d 74, 80–81 (D. Mass. 2005) (claim that

Federal Bureau of Investigation failed to follow up on call by self-proclaimed bank

robber offering to surrender, and caller killed victim the next day, barred by

discretionary function exception); *Flax v. United States*, 847 F. Supp. 1183, 1188–

89 (D.N.J. 1994) (claim of negligent surveillance of kidnap victim by Federal

Bureau of Investigation agents barred by discretionary function exception).

Plaintiff's allegations squarely implicate decisions "discretionary in nature" that

"involv[e] an element of judgment or choice," satisfying the first prong of the

discretionary function exception.  *Freeman v. United States*, 556 F.3d 326, 337 (5th

Cir. 2009).

Further, even if the government had violated procedural requirements for

inspecting Martinez for gang tattoos or contacting the Salvadoran government to

ask if he was on a gang-affiliation list, such conduct, antecedent to Border Patrol's transfer of Martinez as a UAC to ORR custody and ORR's ultimate release of him to a sponsor, would not save Plaintiff's claim from the discretionary function exception. Courts are not bound by Plaintiff's characterization as to what conduct her claim is based upon. *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 286 (3d Cir. 1995) (en banc) ("We know of no authority for the proposition that plaintiffs, by the manner in which they draft their complaints, may dictate that their claims are 'based upon' one government employee's actions and not another's."); *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) ("Courts are not required to, and should not, simply look at the surface of a complaint for the purpose of ascertaining the true basis of an attack upon something the government has done."); *id.* at 1285 (a plaintiff cannot circumvent the exception through "mislabeling and misdescription of the truly discretionary source of the injury."). Rather, a court must determine for itself what Plaintiff's claim truly is "based upon"—that is, the "injury-causing" conduct or decision. *Fisher Bros.*, 46 F.3d at 286–287.

In *In re Katrina Canal Breaches Litigation*, the plaintiffs suffered damage because of the United States' alleged failure to properly maintain the Mississippi River Gulf Outlet ("MRGO"), which led to excessive flooding and levee failures during Hurricane Katrina. 696 F.3d 436, 441 (5th Cir. 2012). Plaintiffs in that case

tried to defeat application of the discretionary function exception to their claims by arguing that the Army Corps of Engineers violated the National Environmental Policy Act ("NEPA") when evaluating maintenance and modification activities for the MRGO. The Fifth Circuit rejected that argument, noting that the cause of the plaintiffs' alleged harm was the alleged failure to maintain MRGO, not the Army Corps of Engineer's alleged failure to comply with NEPA when assessing operational and developmental plans for MRGO. *Id.* at 449–50.

Similarly, here, allegedly mandatory and specific investigative steps for gang affiliation of a UAC (there are none) are irrelevant if the ultimate decision to release Martinez to a sponsor rather than securely detain him is subject to the discretionary function exception. *See Lopez v. ICE*, 455 F. App'x 427, 433 (5th Cir. 2011) (to overcome application of discretionary function exception, "[a]ppellants had to allege facts that, if true, would demonstrate a plausible causal relationship between the nondiscretionary duty and Parada's death"). Stated another way, only after ORR made the subsequent and ultimate discretionary decision to release Martinez rather than securely detain him pending immigration proceedings could Plaintiff be said to have been harmed. ORR's release of Martinez to a sponsor is the allegedly negligent conduct that Plaintiff's claim is "based upon," and the discretionary function exception applies even if there were any preceding violations of purportedly mandatory directives. *See Fisher Bros.*, 46

F.3d at 282–83, 86 (plaintiffs could not escape discretionary nature of Food and Drug Administration's decision to deny entry of Chilean fruit by arguing that the lab that tested contaminated grapes allegedly failed to follow internal laboratory protocols).

In sum, Border Patrol's decision regarding how to inspect and investigate Martinez upon apprehension and designation as a UAC involved "elements of judgment and choice." There were no controlling statutes, regulations or agency policies that prescribed in a specific manner how Border Patrol (or ORR) was to screen a UAC for gang-affiliation. Accordingly, the discretionary function exception bars Plaintiff's claims that Border Patrol "missed Martinez's gang-related tattoos," Compl. ¶ 26, "failed to investigate or vet contradicting narratives provided by Martinez," *id.* ¶ 28, or should have contacted "the El Salvador government to verify if Martinez was on an MS-13 gang-affiliation list," *id.* ¶ 8.b.

## 2. Border Patrol was required to transfer Martinez to ORR custody.

Once Border Patrol determined that Martinez was a UAC, *id.* ¶ 24, it was required to transfer Martinez to ORR custody within 72 hours of his apprehension. 8 U.S.C. § 1232(b)(3). Because Border Patrol was required to transfer Martinez to ORR custody, the discretionary function exception shields the United States from liability based on that conduct. "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the

action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Gaubert*, 499 U.S. at 324.

By law, a UAC is defined as a child who: (1) "has no lawful immigration status in the United States;" (2) "has not attained 18 years of age;" and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Plaintiff agrees that Martinez was a UAC. Compl. ¶ 24.

Immigration law further requires that, "[e]xcept in the case of exceptional circumstances, any department or agency of the Federal Government that has an unaccompanied alien child in custody shall transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). The phrase "exceptional circumstances" modifies the 72-hour requirement (e.g., inclement weather makes transfer impossible for more than 72 hours, or other extraordinary circumstances prevent timely transfer), not the requirement to transfer custody of the UAC to ORR. *See* 6 U.S.C. § 279(b)(1) (ORR responsible for "care and placement" of UACs in custody); 8 U.S.C. § 1232(b)(1) (ORR responsible for "care and custody of all [UAC], including responsibility for their detention").

Because Border Patrol "shall transfer" all UACs to ORR custody, and that is what Border Patrol did with Martinez, the discretionary function exception bars Plaintiff's claims based on that conduct. *Gaubert*, 499 U.S. at 324. The law does not exempt from transfer to ORR custody minors with gang tattoos or gang-affiliations. 8 U.S.C. § 1232.

As explained in the previous section, no statute, regulation, or policy required Border Patrol to "visually inspect [UACs] for gang-related tattoos." Compl. ¶ 8.a; *see* 8 C.F.R. § 236.3(g) ("DHS procedures in apprehension and processing of minors or UACs"). No statute, regulation, or policy required Border Patrol to contact a UAC's home country to inquire if the UAC is on a "gang-affiliation list." Compl. ¶ 8.b; 8 C.F.R. 236.3(g). Even if a statute, regulation, or policy did require those investigative steps, federal law required Martinez to be transferred from Border Patrol to ORR custody. Put differently, even if Border Patrol had learned that Martinez had gang affiliations (despite Martinez informing Border Patrol he fled El Salvador because he feared the gangs), Border Patrol still was mandated to transfer Martinez to ORR custody. 8 U.S.C. § 1232(b); 8 C.F.R. § 236.3(f).

Accordingly, Border Patrol agents followed mandatory federal statutes and regulations in transferring Martinez to ORR custody. Plaintiff's claims based upon that transfer are barred by the discretionary function exception.

### 3. The discretionary function exception bars Plaintiff's challenge to ORR's decision to release Martinez to a sponsor.

The discretionary function exception also applies to ORR's decision to release Martinez to a sponsor rather than place him in a secure facility. Congress instructed ORR to "promptly" place UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Congress also legislated that UACs "shall not be placed in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." *Id.*

At the time of Martinez's apprehension, applicable regulations defined a "secure facility" as "a State or county juvenile detention facility or a secure ORR detention facility, or a facility with an ORR contract or cooperative agreement having separate accommodations for minors." 45 C.F.R. § 410.101 (2019) (repealed)[2]. ORR separately identified "staff secure facilities." "A staff secure

---

[2] In 2019, DHS and HHS issued regulations addressing "the apprehension, processing, care, custody, and release of alien juveniles." Apprehension, Processing, Care, and Custody of Alien Minors, 84 Fed. Reg. 44392-01 (Aug. 23, 2019). The Ninth Circuit subsequently affirmed, in part, a district court order enjoining many aspects of those rules. *Flores v. Rosen*, 984 F.3d 720, 744 (9th Cir. 2020). Following that decision, portions of the rules remained in effect while other portions were permanently enjoined. In 2024, DHS and ORR repealed the 2019 rules and replaced those rules with new rules currently codified at 45 C.F.R. Part 410, Subpart A. Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34384-01 (Apr. 30, 2024). The relevant statutes, regulations, and policies for purposes of the discretionary function exception analysis here are those

facility is designed for a UAC who requires close supervision but does not need placement in a secure facility." *Id.*

As of 2022:

ORR may place a UAC in a secure facility if the UAC:

(1) Has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act, and where ORR deems those circumstances demonstrate that the UAC poses a danger to self or others. "Chargeable" means that ORR has probable cause to believe that the UAC has committed a specified offense. The provision in this paragraph (a)(1) does not apply to a UAC whose offense is:

(i) An isolated offense that was not within a pattern or practice of criminal activity and did not involve violence against a person or the use or carrying of a weapon; or

(ii) A petty offense, which is not considered grounds for stricter means of detention in any case;

(2) While in DHS or ORR's custody or while in the presence of an immigration officer, has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself/herself or others);

(3) Has engaged, while in a licensed program or staff secure facility, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program or staff secure facility in which he or she has been placed and removal is necessary to ensure the welfare of the UAC or others, as determined by the staff of the licensed program or staff secure facility (e.g., drug or alcohol abuse,

---

in effect in 2023, when all challenged acts or omissions occurred. *See Loughlin v. United States*, 393 F.3d 155, 166 (D.C. Cir. 2004) ("That a Government agent in 1999 made a different decision is irrelevant"); *Allen v. United States*, 816 F.2d 1417, 1424 (10th Cir. 1987) ("However erroneous or misguided these deliberations may seem today, it is not the place of the judicial branch to now question them").

stealing, fighting, intimidation of others, or sexually predatory behavior), and ORR determines the UAC poses a danger to self or others based on such conduct;

(4) For purposes of placement in a secure residential treatment centers (RTC), if a licensed psychologist or psychiatrist determines that the UAC poses a risk of harm to self or others

45 C.F.R. § 410.203 (repealed).[3]

ORR policy further provided that:

ORR only places an unaccompanied alien child in a secure facility if the child:

1. poses a danger to self or others; or

2. has been charged with or convicted of a criminal offense, or is chargeable with such an offense.

ORR Children Entering the United States Unaccompanied § 1.2.4 (Feb. 22, 2021).

ORR policy also provided that:

In determining whether to place a youth in secure care, ORR considers if the unaccompanied alien child:

• Has been charged with a crime, is chargeable with a crime, or has been convicted of a crime; or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; and assesses whether the crimes or delinquent acts were:

• isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person, or the use or carrying of a weapon (e.g., breaking and entering, vandalism, DUI, status offenses, etc.); or

---

[3] There was a fifth factor, "(5) Is otherwise a danger to self or others," but in 2020, the Ninth Circuit permanently enjoined that provision. *Flores*, 984 F.3d at 732.

> • petty offenses which are not considered grounds for a stricter means of detention in any case (e.g., shoplifting, joy riding, disturbing the peace).
>
> • Has committed, or has made credible threats, to commit a violent or malicious act while in ORR custody;
>
> • Has committed, threatened to commit, or engaged in serious, self-harming behavior that poses a danger to self while in ORR custody;
>
> • Has engaged in conduct that has proven to be unacceptably disruptive of the normal functioning of a staff secure facility in which the youth is placed such that transfer may be necessary to ensure the welfare of the UAC or others;
>
> • Has self-disclosed violent criminal history in ORR custody that requires further assessment; or
>
> • Has a history of or displays sexual predatory behavior, or has engaged in inappropriate sexual behavior.

*Id.*

The applicable statutes, regulations, and policies all confer discretion upon ORR rather than prescribe a specific course of conduct. To permissibly place a UAC in a secure facility, ORR had to determine that "the child poses a danger to self or others." 8 U.S.C. § 1232(c)(2)(A). There are no allegations that Martinez was a known danger to himself or others when he was transferred to ORR. Accordingly, Plaintiff does not allege any facts for ORR to permissibly have placed Martinez in a secure facility.

Even in the contra-factual scenario where ORR was aware of Martinez's alleged gang tattoos or alleged gang affiliation, ORR regulations and policies did

not mandate secure facility placement. ORR "*may* place" a UAC in a secure facility if one, or more, conditions are present. 45 C.F.R. § 410.203 (repealed) (emphasis added). Use of the word "may" indicates the decision is discretionary. *Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 324 (5th Cir. 2009). Moreover, there are no allegations that Martinez met any of the factors ORR considers when exercising its discretion to place minors in secure facilities: he had not been "charged with, is chargeable, or has been convicted of a crime;" he had not "committed, or has made credible threats to commit, a violent or malicious act;" while at Compass Connections he did not engage in "conduct that has proven to be unacceptably disruptive;" and he did not provide Compass Connections with any evidence that a licensed psychologist or psychiatrist diagnosed him as posing a risk of harm to himself or others.

Even if Plaintiff alleged that ORR should have placed Martinez in a staff secure facility (she does not), the discretionary function exception applies to that decision as well. ORR regulations (at the time) provided that "ORR *may* place a UAC in a staff secure facility or other licensed program as an alternative to a secure facility." 45 C.F.R. § 410.205 (repealed) (emphasis added). ORR policy permitted ORR to consider six factors. As with the secure facility assessment, there are no allegations that Martinez qualified under any of those factors: he had not been charged with a crime; had not threatened violence while at Compass

24

Connections; had not committed or threatened self-harm while at Compass Connections; had not engaged in disruptive behavior; had not self-disclosed violent criminal history; and had not displayed sexual predatory or inappropriate sexual behavior. Even if ORR should have discovered MS-13 gang tattoos or the El Salvador government's association of Martinez with MS-13, no statute, regulation, or policy mandated placement of Martinez in a secure care facility.

Accordingly, Plaintiff has not identified any mandatory and specific statute, regulation, or policy that required placement of Martinez in a secure facility or staff secure facility. ORR's decision to release Martinez to a sponsor, rather than hold him in a secure facility, involved judgment or choice that was susceptible to policy determinations (primarily Congress' strong preference for prompt release of noncitizen children to "the least restrictive setting practicable") of the type the discretionary function exception is intended to cover. Thus, the discretionary function exception applies to Plaintiff's challenge to ORR's placement decision.

### 4. The discretionary function exception applies to ORR's approval of Ms. D.C.M. as a sponsor.

To the extent Plaintiff challenges ORR's release of Martinez to Ms. D.C.M. instead of another sponsor, *see* Compl. ¶¶ 8.c (implying Ms. D.C.M. was not a "legitimate family member"), 25 (challenging placement "with an alleged first cousin"), 28 (discussing potential sponsors), the discretionary function exception also applies to that conduct. Martinez only identified two potential sponsors to

Compass Connections.  Harvey Decl. ¶ 6.  By law, ORR was required to:

> release a minor from its custody without unnecessary delay, in the
> following order of preference, to:
>
> > A.      a parent;
> >
> > B.      a legal guardian;
> >
> > C.      an adult relative (brother, sister, aunt, uncle, or
> > grandparent);
> >
> > D.      an adult individual or entity designated by the parent or
> > legal guardian and willing to care for the minor's well being in (i) a
> > declaration signed under penalty of perjury before an immigration or
> > consular officer or (ii) such other document(s) that establish(es) to the
> > satisfaction of the INS, in its discretion, the affiant's paternity or
> > guardianship;
> >
> > E.      a licensed program willing to accept legal custody; or
> >
> > F.      an adult individual or entity seeking custody, in the
> > discretion of INS, when it appears that there is no other likely
> > alternative to long term detention and family reunification does not
> > appear to be a reasonable possibility.

Flores Settlement Agreement ¶ 14; *accord* 45 C.F.R. § 410.301 (repealed) (setting

forth an identical placement preference list).

Ms. D.C.M. was Martinez's adult cousin.  Harvey Decl. ¶ 6.  The other

potential sponsor, J.V.M.A., was not related to Martinez and had not sought

custody of Martinez.  Thus, Ms. D.C.M. was the highest-ranked available sponsor.

By releasing Martinez to Ms. D.C.M., ORR complied with the applicable

regulation, and therefore the discretionary function exception applies to that

decision.  *Gaubert*, 499 U.S. at 324.

**5.** **The discretionary function exception bars Plaintiff's negligent training and supervision claim.**

Plaintiff's allegation that the government negligently "trained and supervised DHS employees," Compl. ¶ 8.d, is subject to the discretionary function exception. It is well-established that negligent training and supervision claims as here are subject to the discretionary function exception. *M.D.C.G.*, 956 F.3d at 772 ("federal employees' supervision of subordinates involves the kind of judgment that the discretionary function exception was meant to protect"); *accord CNA v. United States*, 535 F.3d 132, 148–150 (3d Cir. 2008) (claim based on failure to adequately train and supervise Army recruiter barred by discretionary function exception); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("negligent and reckless employment, supervision and training of the [Federal employees] . . . fall squarely within the discretionary function exception"); *Burkhart v. Wash. Metro. Area Trans. Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("hiring, training, and supervision choices" subject to discretionary function exception); *Flynn v United States*, 902 F.2d 1524, 1530–1531 (10th Cir. 1990) (failure of National Park Service to train its employees as to proper use of emergency equipment falls within the exception). The Court should dismiss Plaintiff's negligent training and supervision claim.

## B.    The FTCA's Independent Contractor Exception Bars Any Claims Arising Out of Compass Connections' Acts or Omissions.

If Plaintiff alleges that Compass Connections failed to properly "vet" Ms. D.C.M. or that she was not an appropriate sponsor, *see* Compl. ¶¶ 8.c, 28, that claim is subject to the FTCA's independent contractor exception.  Compass Connections, not ORR, identified Ms. D.C.M. as a sponsor and performed her background check.  Harvey Decl. ¶¶ 6–7.  Compass Connections is an independent contractor, and the United States is not liable for its acts or omissions under the FTCA.

Congress excluded from the FTCA's definition of "employees of any federal agency" employees of "any contractor with the United States." 28 U.S.C. § 2671. The United States is therefore "not liable for the negligence of the employees of [a contractor]."  *Logue v. United States*, 412 U.S. 521, 532 (1973).  Here, ORR entered into a cooperative agreement with Compass Connections.  A cooperative agreement is a procurement contract to "carry out a public purpose of support or stimulation authorized by a law of the United States." 31 U.S.C. § 6305.  Congress authorized ORR to "to provide assistance, reimbursement to States, and grants to and contracts with public and private nonprofit agencies, for the provision of child welfare services, including foster care maintenance payments and services."  8 U.S.C. § 1522(d)(2)(A); *see also* 6 U.S.C. § 279(b)(3) (assigning foster care functions to ORR).

As noted above, under the cooperative agreement, Compass Connections agreed to be responsible for "provid[ing] residential shelter and services," including complying with the *Flores* settlement agreement and all applicable laws and regulations. Cooperative Agreement § IV.A. Accordingly, by contract, Compass Connections had to identify and vet potential sponsors. *Flores* Settlement Agreement ¶ 14; 45 C.F.R. § 410.301 (repealed). Compass Connections also agreed to be solely responsible for training and supervising its staff. Cooperative Agreement §§ IV.C, IV.E. Thus, the relationship between ORR and Compass Connections was one where "Congress not only authorized the Government to make contracts such as the one here in question, but rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." *Logue,* 412 U.S. at 552. The FTCA's independent contractor exception therefore bars any claims based on Compass Connections' identification of and vetting of Ms. D.C.M. as a sponsor. *See Walding v. United States*, 955 F. Supp. 2d 759, 811 (W.D. Tex. 2013) (finding independent contractor exception applied to claims arising out of facility's treatment of UACs pursuant to a cooperative agreement).

### C. Independently, the United States Owed No Duty of Care to Plaintiff's Decedent.

The Court also lacks subject matter jurisdiction over Plaintiff's claims

because under applicable state substantive law (here, Texas), the United States owed no duty of care to warn or protect Ms. Hamilton from Martinez's criminal conduct. All allegedly negligent acts or omissions occurred in Texas, thus Texas substantive law applies to this action. *Richards v. United States*, 369 U.S. 1, 11 (1962); 28 U.S.C. § 2674.

Under Texas law, duty is an essential element of a negligence claim. *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 638 (Tex. 2023). Generally, there is no legal duty under Texas law to protect another from the criminal acts of a third party. *See Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998) ("At common law there is generally no duty to protect another from the criminal acts of a third party or to come to the aid of another in distress."); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) ("Generally, there is no duty to control the conduct of third persons."). Here, Martinez, not any employee of the government, murdered Ms. Hamilton.

Texas recognizes a limited exception to the general rule that a person has no duty to protect another from criminal acts of third parties "when a special relationship exists between the actor and the third party which imposes a duty upon the actor to control the third person's conduct." *Greater Houston Transp. Co.*, 801 S.W.2d at 525 (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)). When assessing whether a "special relationship" exists, Texas courts look

to the Restatement.  *Otis Eng'g Corp.*, 688 S.W.2d at 309.

"Special relationships" include common carrier to passenger, innkeeper to guest, landowner to invitee, employer to employee, and custodian to person in custody.  Restatement (Second) Torts § 314A; *see VIA Metro. Transit v. Meck*, 620 S.W.3d 356, 366 n.10 (Tex. 2020) (citing Restatement).  Other "special relationships" include a landowner and invitee, *Timberwalk Apts., Partners v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998), and parent and child, *Rodriguez v. Spencer*, 902 S.W.2d 37, 43 (Tex. Ct. App. 1995).  There is no recognized special relationship between ORR and a released UAC.

The facts here are similar to those presented in *Boren v. Texoma Medical Center, Incorporated*, 258 S.W.3d 224 (Tex. Ct. App. 2008).  In *Boren*, a patient presented to an emergency room and doctors diagnosed the patient as "depressed, paranoid, and suicidal with suicidal ideation."  *Id.* at 225.  Both the treating doctors and the mental health counselor agreed "that hospitalization was appropriate."  *Id.* at 226.  The patient refused voluntary admission to the hospital.  *Id.*  The hospital then obtained an emergency court order for the patient's detention and a warrant for immediate apprehension.  *Id.*  But, before the hospital could effectuate the warrant, the patient left the hospital.  *Id.* at 227.  The next day, the patient murdered the plaintiffs' decedents, the patient's ex-wife, boyfriend, and child.  *Id.*  The *Boren* court held that the hospital did not owe a duty of care to plaintiffs'

31

decedents.  *Id.* at 230.

Similarly, here, Plaintiff alleges that ORR should have securely detained Martinez.  But, as explained above, the law compelled ORR to place Martinez in the "least restrictive setting."  He could not permissibly be placed in a secure facility because there was no evidence that he was "a danger to self or others or has been charged with having committed a criminal offense."  8 U.S.C. § 1232(c)(2)(A).  Martinez murdered Ms. Hamilton after he was released from government custody.  ORR and Compass Connections exercised no control over Martinez once released to a sponsor.  Accordingly, the government did not owe a duty to Ms. Hamilton to protect her from the criminal acts of Martinez.

ORR does not owe a duty to the public at large to supervise and protect all from potential criminal conduct of released UACs.  Because the United States did not owe a duty of care to protect Ms. Hamilton from Martinez's criminal conduct, this Court lacks subject matter jurisdiction over Plaintiff's claims.

## V.     CONCLUSION

This Court lacks subject matter jurisdiction over Plaintiff's FTCA claims and should dismiss.

Dated:       May 29, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

KIRSTEN L. WILKERSON
Director, Torts Branch

 s/ Stephen R. Terrell
STEPHEN R. TERRELL (CA Bar No. 210004)
Fed. ID No. 3906717
Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Tel:   (202) 353-1651
Fax:  (202) 616-5200
Stephen.Terrell2@usdoj.gov

*Attorneys for Defendant United States of America*