# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

TAMMY NOBLES,           §
                             §
      Plaintiff,          §
                             §
v.                             §     CIVIL ACTION No. 4:25-cv-343
                             §
UNITED STATES,        §
                             §
      Defendant.       §

## UNITED STATES' REPLY BRIEF IN SUPPORT OF
## ITS MOTION TO DISMISS

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRSTEN L. WILKERSON
Director, Torts Branch

STEPHEN R. TERRELL (CA Bar No. 210004)
Fed. ID No. 3906717
Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................1

II. ARGUMENT ....................................................................................3

    A.    The Discretionary Function Exception Bars Plaintiff's Action. ...........3

    B.    The Court Should Reject Plaintiff's Plea for Jurisdictional Discovery. .........................................................................................11

    C.    The Independent Contractor Exception Bars Plaintiff's Claims Premised on Acts or Omissions of Compass Connections. ................13

    D.    The United States Owed No Duty of Care to Ms. Hamilton Under Texas Law.........................................................................................13

    E.    The Court Should Reject Plaintiff's Specious Sanctions Argument...17

III. CONCLUSION...............................................................................18

# TABLE OF AUTHORITIES

## Cases

*Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789 (N.D. Tex. 2010) ..................................................................................................12

*Berkovitz v. United States*, 486 U.S. 531 (1988).............................................. 5, 10

*Boren v. Texoma Med. Ctr., Inc.*, 258 S.W.3d 224 (Tex. Ct. App. 2008) ...............16

*Brownback v. King*, 592 U.S. 209 (2021) ...............................................................13

*Carcamo-Lopez v. Does*, 865 F. Supp. 2d 736 (W.D. Tex. 2011) ............................6

*Crider v. United States*, 885 F.2d 294 (5th Cir. 1989) ...........................................17

*Dalehite v. United States*, 346 U.S. 15 (1953) .........................................................5

*Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) ...........................................11

*Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307 (5th Cir. 2009)...................7

*Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016 (C.D. Cal. 2010) ..............................................................................................9

*Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664 (S.D. Tex. 2014).....................................................................................................11

*Flax v. United States*, 847 F. Supp. 1183 (D.N.J. 1994) ..........................................9

*Freeman v. United States*, 556 F.3d 326 (5th Cir. 2009)........................................12

*Garcia v. Amfels, Inc.*, 254 F.3d 585 (5th Cir. 2001) ...............................................6

*Gonzalez v. United States*, 851 F.3d 538 (5th Cir. 2017)........................................9

*Guzman v. Jones*, 804 F.3d 707 (5th Cir. 2015)......................................................17

*Hernandez v. Mesa*, 589 U.S. 93 (2020)...................................................................2

*HNMC, Inc. v. Chan*, 683 S.W.3d 373 (Tex. 2024) .......................................... 2, 14

*In re Katrina Canal Breaches Litigation*, 696 F.3d 436 (5th Cir. 2012) ..................6

*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021) .................11

*Logue v. United States*, 412 U.S. 521 (1973)...........................................................13

*Mall v. Plunkett*, 404 S.W.3d 552 (Tex. 2013).........................................................16

*McCloskey v. Mueller*, 385 F. Supp. 2d 74 (D. Mass. 2005) ....................................9

*Offiong v. Holder*, 864 F. Supp. 2d 611 (S.D. Tex. 2012)........................................10

*Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022).........................................................11

*Sanders v. United States*, 937 F.3d 316 (4th Cir. 2019) ............................................7

*Seaside Farm, Inc. v. United States*, 842 F.3d 853 (4th Cir. 2016)...........................8

*Soldano v. United States*, 453 F.3d 1140 (9th Cir. 2006).........................................6

*Suter v. United States*, 441 F.3d 306 (4th Cir. 2006) ................................................9

*Tex. Home Mgmt. v. Peavy*, 89 S.W.3d 30 (2002).....................................................15

*Tsolmon v. United States*, 841 F.3d 378 (5th Cir. 2016) .......................................8, 9

*United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627 (Tex. 2023).......................14

*United States v. Gaubert*, 499 U.S. 315 (1991) ................................................. 5, 10

**Statutes**

8 U.S.C. § 1232 ............................................................................................. passim

28 U.S.C. § 2671 .............................................................................................. 2, 13

28 U.S.C. § 2680............................................................................................... 1, 2

**Other Authorities**

Restatement (Second) of Torts § 323 ......................................................................16

**Rules**

Fed. R. Civ. P. 37 ................................................................17

Fed. R. Evid. 102 ................................................................11

Fed. R. Evid. 801 ................................................................10

Fed. R. Evid. 802 ................................................................10

Fed. R. Evid. 803 ................................................................10

**Regulations**

45 C.F.R. § 410.203 ............................................................7, 8

45 C.F.R. § 410.207 ............................................................14

# I.     INTRODUCTION

The Department of Health and Human Service's Office of Refugee Resettlement's ("ORR") decision whether "to place Martinez in a secure facility for criminal" unaccompanied alien children ("UACs") "rather than releasing him to a sponsor," Opp'n 19 (ECF No. 43),[1] involved judgment and choice informed by considerations of public policy. The Federal Tort Claims Act's ("FTCA") discretionary function exception, 28 U.S.C. § 2680(a), therefore bars Plaintiff's action. Federal statutes, regulations, and ORR policies govern its placement decisions. The statutes and regulations are, and always have been, available to Plaintiff. The United States attached to its motion ("Mot.") the applicable ORR policy. Mot. **Ex. O** (ECF No. 40-15). Plaintiff requires no additional information or discovery to respond to the United States' motion. Because the federal statutes, regulations, and applicable ORR policy all confer discretion on the employees making placement decisions, Plaintiff has not and cannot overcome application of the discretionary function exception.

This FTCA wrongful death action is not the vehicle to litigate immigration

---

[1] Plaintiff filed a 29-page oversized brief without obtaining leave of Court. *See* Procedures Order 6 (limiting brief to 20 pages absent leave of Court). Plaintiff's brief also appears to not comply with the Local Rules. *Compare* LR10.2 (requiring double spacing) *with* Opp'n (less than double spacing). The United States respectfully requests that the Court address Plaintiff's failure to comply with its Rules and Procedures as appropriate.

policy decisions of the prior Administration.  That debate is reserved to the political process.  *See*, *e.g.*, *Hernandez v. Mesa*, 589 U.S. 93, 107 (2020) ("The question is not whether national security requires such conduct—of course, it does not—but whether the Judiciary should alter the framework established by the political branches for addressing cases in which it is alleged that lethal force was unlawfully employed by an agent at the border.").  As noted by Plaintiff, Congress is currently evaluating how United States' immigration laws should apply.  Opp'n Exs. A, B.  The Executive Branch applies the laws as they are, not as Congress may amend them at some point in the future, and the United States remains immune from Plaintiff's tort claim "whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Even if ORR's placement decision was erroneous in hindsight—which the United States contests—Plaintiff's criticisms of that decision do not now create a mandatory and specific statutory, regulatory, or policy proscription that left ORR with no judgment or choice.

Plaintiff admits "that Compass Connections is an independent contractor." Opp'n 22.  Thus, Plaintiff should concede that the United States is not liable under the FTCA for any alleged acts or omissions by Compass Connections.  28 U.S.C. § 2671.

Finally, under Texas substantive law, duty is a question of law for the Court. *HNMC, Inc. v. Chan*, 683 S.W.3d 373, 380 (Tex. 2024) (citation omitted).

Accepting all of Plaintiff's factual allegations as true, the United States did not owe a duty of care to Ms. Hamilton under applicable law to warn her of or protect her from Martinez's criminal conduct when he was a released UAC living with a sponsor. The Court may resolve the duty issue now and should dismiss the Complaint.

## II. ARGUMENT

### A. The Discretionary Function Exception Bars Plaintiff's Action.

The FTCA's discretionary function exception bars Plaintiff's claims that the United States allegedly failed to "sufficiently screen Martinez for potential gang affiliation or criminal history at the time of his apprehension," Opp'n 2, 17, "allow[ed] Martinez to enter the United States," *id.* at 16, and failed to "place Martinez in a secure facility for criminal UACs rather than releasing him to a sponsor," *id.* at 19. UAC placement decisions are discretionary and considerations of public policy inform how ORR makes those placement decisions.

In her opposition, Plaintiff does not identify any specific and mandatory statutes, regulations, or policies allegedly violated by any employee when apprehending Martinez, transferring him to ORR custody, and placing him with a sponsor. *Id.* at 11–21. She, instead, studiously avoids all applicable statutes, regulations, and policies and argues that the government's interactions with Martinez were "fairly routine," "day-to-day decisions," dealing only with

"operational" matters of "public safety." *Id.* at 12–13, 15–17. By ignoring the applicable statutes, regulations, and policies, she argues that the government's decision to place Martinez with a sponsor categorically cannot fall within the ambit of the discretionary function exception and focuses exclusively on the government's alleged negligence by relying entirely on House Judiciary Committee reports that are critical of immigration law and how the Agencies implemented those laws and policies in this case, but nowhere state that the government violated any mandatory and specific statutes, regulations, or policies. Plaintiff's arguments fail to address the Supreme Court's two-part discretionary function exception test and do not meet her burden to avoid application of the exception.

The Department of Homeland Security ("DHS") had to transfer Martinez to ORR custody within 72 hours of apprehension because he was a UAC from a non-contiguous country. 8 U.S.C. § 1232(b)(3). The applicable statute contains a clear and mandatory directive to DHS: transfer UACs to ORR custody. There is no exception for juvenile criminals or those with gang affiliations. DHS, through the United States Border Patrol, complied with this statutory directive. Mot. **Ex. J**. As observed by the Supreme Court, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation

of the regulation." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (discussing discretionary function exception); *accord Dalehite v. United States*, 346 U.S. 15, 36 (1953) ("acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable"). The discretionary function exception (not the separate and independent so-called "due care" exception, *contra* Opp'n 19) bars Plaintiff's challenges to DHS's conduct in transferring Martinez to ORR custody.

Congress tasked ORR with determining whether to release a UAC to a sponsor or place the UAC in a secure facility. 8 U.S.C. § 1232(c)(2)(A). In the applicable statute, Congress set forth a policy preference to place UACs in "the least restrictive setting that is in the best interest of the child" and cabined ORR's discretion to place UACs in a secure facility to situations where ORR makes "a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." *Id.* These policy considerations, included by Congress in the governing statute, are "legislative and administrative decisions grounded in social, economic, and political policy" the discretionary function exception covers. *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988).

Once a UAC is transferred to ORR custody, ORR has a choice: release the UAC to a sponsor or place the UAC in a secure facility. Congress further

instructed ORR to make its choice based on Congress's policy preference to place UACs in the least restrictive setting that is in the best interest of the child. 8 U.S.C. § 1232(c)(2)(A). ORR's placement decision falls squarely within the discretionary function exception. ORR's placement decision is not akin to the exercise of medical judgment, *Carcamo-Lopez v. Does*, 865 F. Supp. 2d 736, 756–57 (W.D. Tex. 2011), or application of "safety considerations under an established policy rather than the balancing of competing public policy considerations," *Soldano v. United States*, 453 F.3d 1140, 1146 (9th Cir. 2006).[2] *Contra* Opp'n 13. The Fifth Circuit has rejected similar arguments to those advanced by Plaintiff and held that "[i]f the government's discretion is 'grounded in the policy of the regulatory regime,' the decision is immune under the [discretionary function exception], even if it also may entail application of scientific principles." *In re Katrina Canal Breaches Litigation*, 696 F.3d 436, 451 (5th Cir. 2012). Plaintiff's effort to recast ORR's placement decision as a "safety" decision, while ignoring the clear and explicit public policy considerations in the applicable statute, is unpersuasive.

ORR has broad discretion to investigate and determine whether "the child poses a danger to self or others or has been charged with having committed a

---

[2] Ninth Circuit decisions only have persuasive value in this Court. *See Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001) (highlighting that out of circuit authority is persuasive, not binding authority).

criminal offense." 8 U.S.C. § 1232(c)(2)(A). The applicable regulation was 45 C.F.R. § 410.203 (repealed).[3] The regulation makes explicit that the placement decision is discretionary: ORR "*may* place" a UAC in a secure facility. *Id.* ORR regulations do not mandate placement of any UACs in secure facilities. *C.f. Sanders v. United States*, 937 F.3d 316, 331 (4th Cir. 2019) (where internal policies "contain a set of requirements specifying the course of action an Examiner *must* take in conducting a background check" the exception does not apply "where an Examiner's *mandatory* research yields precisely the type of information the SOPs require, she *must* act on that information") (emphasis added); Opp'n 12–13. The specific statement that ORR "may" place a UAC with a sponsor or in a secure facility should end the inquiry. *Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 324 (5th Cir. 2009).

Further, the ORR regulation sets forth numerous factors that ORR may consider. 45 C.F.R. § 410.203 (repealed). ORR is to decide if the UAC has committed a chargeable criminal offence or whether that potentially criminal conduct was "[a]n isolated offense" or a "petty offense." *Id.* ORR should consider whether any threats made by the UAC were "credible." *Id.* ORR may evaluate whether the UAC was "unacceptably disruptive" while in custody. *Id.* All of these

---

[3] Plaintiff disavows any claim that ORR had to place Martinez in a "staff secure facility." *See generally* Opp'n.

are discretionary judgments or choices. ORR makes all of these judgment calls against the backdrop of Congress's public policy preference to place UACs in "the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A); *see also Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016) (discretionary function exception applied to "investigation into [immigrant's] status" and decision to detain).

ORR further promulgated policies to guide its placement decisions. Children Entering the United States Unaccompanied Section 2.2.1 (June 7, 2021), Mot. **Ex. O**. Where, as here, a statute (8 U.S.C. § 1232) or regulation (45 C.F.R. § 410.203 (repealed)) affords the exercise of judgment or choice, arguably mandatory language in an internal guidance or policy manual does not remove the case from the discretionary function exception. *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 859 (4th Cir. 2016) ("It is questionable, moreover, whether something as informal as a guidance manual can overcome a statutory consignment of agency discretion."). Even so, ORR's policy is not mandatory. It sets forth six factors ORR may consider. Like the ORR regulation, these factors ask ORR to consider whether any potentially criminal conduct was "[a]n isolated offense" or a "petty offense;" whether any threats made by the UAC were "credible;" whether the UAC engaged in conduct that was "unacceptably disruptive" while in custody; has "self-disclosed" a violent criminal history; or engaged in "inappropriate"

sexual behavior while in custody.  Mot. **Ex. O**.  As with the governing statute and regulations, the ORR policy shows that its placement decision is a decision covered by the discretionary function exception.  *Tsolmon*, 841 F.3d at 383.

Plaintiff's focus on potential investigatory steps ORR may have undertaken to inform its placement decision is irrelevant.  Plaintiff's assertion that the United States "could have and should have" conducted additional investigatory steps, Opp'n 17, is not the standard for the discretionary function exception.  No federal statute, regulation, or policy specifically mandated checking for gang tattoos or checking Martinez's criminal history with the Salvadorean consulate.  It is equally irrelevant that the United States "has the ability" to contact a consulate.  *Id.* at 18.  Allegedly negligent criminal (and civil) investigations are subject to the discretionary function exception.  *See* Mot. 14 (citing *Suter v. United States*, 441 F.3d 306, 311–12 (4th Cir. 2006); *Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1051 (C.D. Cal. 2010); *McCloskey v. Mueller*, 385 F. Supp. 2d 74, 80–81 (D. Mass. 2005); *Flax v. United States*, 847 F. Supp. 1183, 1188–89 (D.N.J. 1994)).  And when assessing application of the discretionary function exception, "the question of whether the government was negligent is irrelevant."  *Gonzalez v. United States*, 851 F.3d 538, 544 (5th Cir. 2017).

The applicable statutes, regulations, and policies all conferred discretion on ORR when it decided whether to place Martinez with a sponsor or to securely

detain him.  Congress's explicit public policy favoring placement in the least restrictive environment informed ORR's decision.  Plaintiff has not established in her Opposition that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime," *Gaubert*, 499 U.S. at 324–25, or that "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" such that "the employee has no rightful option but to adhere to the directive," *Berkovitz*, 486 U.S. 536.  Plaintiff has not identified a mandatory and specific statute, regulation, or policy allegedly violated by the United States.  The House Judiciary Committee reports cited by Plaintiff did not identify any mandatory and specific statute, regulation, or policy allegedly violated by the United States.  *See generally* Opp'n Exs. A and B.

The House Committee reports are hearsay not subject to any exception, Fed. R. Evid. 801, 803, inadmissible, Fed. R. Evid. 802, and do not satisfy Plaintiff's burden on this motion to "submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists."  *Offiong v. Holder*, 864 F. Supp. 2d 611, 616 (S.D. Tex. 2012).  But even if the Court considers the reports, they do not establish that any government employee violated a mandatory and specific statute, regulation, or policy when deciding to place Martinez with a sponsor that would remove Plaintiff's claims from the ambit of the discretionary function

exception.[4]

## B. The Court Should Reject Plaintiff's Plea for Jurisdictional Discovery.

Plaintiff's opposition fails to meet the high burden necessary to permit jurisdictional discovery. She repeatedly references a desire for discovery, Opp'n 4–5, 10–11, 15, 18, 21, 28–29, but has not separately moved for leave to conduct jurisdictional discovery or established a need or entitlement to discovery.

"[S]overeign immunity is an immunity from *suit* (including discovery), not just liability." *Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022) (emphasis in original). To obtain jurisdictional discovery, Plaintiff must "specify what facts [she] believes discovery would uncover and how those facts would support . . . jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014). To allow jurisdictional discovery, the Court should satisfy itself that Plaintiff has effectively made a proffer, *see* Fed. R. Evid. 102(a)(2) ("a party informs the court of its substance by an offer of proof"), of "specific facts," *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021), that show she is "likely to produce the facts needed to withstand" dismissal, *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (cleaned up). The Court should

---

[4] Plaintiff abandons and disavows any argument that she advances a negligent supervision or training argument in her Complaint. Opp'n 21. Plaintiff further abandons any claim that placement with Ms. D.C.M., as opposed to another sponsor, is the basis of her claim. *Id.*

not permit "a jurisdictional fishing expedition." *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010).

Here, Plaintiff identifies no specific discovery or additional information she submits will establish jurisdiction. The only potential discovery she mentions is a "deposition of former U.S. Secretary of Homeland Security Alejandro Mayorkas." Opp'n 10. In addition to being improper even if the parties were in discovery, Plaintiff fails to explain how this deposition would bear upon ORR's placement decision. As noted above, Plaintiff and the Court have all applicable statutes, regulations, and policies governing ORR's placement decision. Plaintiff and the Court also have the cooperative agreement between ORR and Compass Connections (with respect to the United States' independent contractor exception argument, *infra*). Mot. **Ex. L**. There is no need for jurisdictional discovery to resolve the United States' motion and the Court should reject Plaintiff's plea for discovery. *See Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009) ("[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion. . . . This is particularly true where the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery.").

## C. The Independent Contractor Exception Bars Plaintiff's Claims Premised on Acts or Omissions of Compass Connections.

Congress excluded from FTCA coverage acts or omissions by "any contractor with the United States." 28 U.S.C. § 2671; *accord Logue v. United States*, 412 U.S. 521, 532 (1973) (applying exception). Plaintiff admits "that Compass Connections is an independent contractor." Opp'n 22. Her only argument is that the cooperative agreement with Compass Connections does not contain a "hold harmless clause." *Id.* The FTCA does not require such a clause for the independent contractor exception to apply. The Court should dismiss Plaintiff's claims to the extent she premises them on acts or omissions of Compass Connections (including identification of and vetting of Ms. D.C.M. as a sponsor).[5]

## D. The United States Owed No Duty of Care to Ms. Hamilton Under Texas Law.

To invoke the FTCA's limited waiver of sovereign immunity, Plaintiff must establish the six elements of a FTCA claim, including showing that "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Brownback v. King*, 592 U.S. 209, 212 (2021) (citation omitted). This element, like all elements of the FTCA, is jurisdictional. *Id.* at 217. Under Texas law, the existence of a legal duty

---

[5] As noted above, Plaintiff appears to abandon any claims that Ms. D.C.M. was not a proper sponsor for Martinez. *See* note 4, *supra*.

by the defendant to the plaintiff is an essential element of a plaintiff's negligence claim. *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 638 (Tex. 2023). Further, under Texas law, as noted above, duty is a question of law for the Court. *HNMC, Inc.*, 683 S.W.3d at 380.

Plaintiff erroneously argues that duty is fact-bound and that the Court should defer resolution of this issue until summary judgment. Opp'n 4–5. That is not true where, as here, the United States' argument rests on Plaintiff's own allegations and undisputed evidence. Plaintiff then argues that a special relationship between the government and Martinez imposes a duty, *id.* at 24–28, but premises her argument on the contra-factual assumption that, at the time of the murder, Martinez was in ORR custody or under ORR control. Plaintiff alternatively argues the government owed a duty of care because of a negligent undertaking, *id.* at 28–29, but makes no effort to point to facts or allegations that would invoke that narrow rule under Texas law.

Plaintiff's own allegations and the evidence submitted by the United States establish that ORR released Martinez from custody before he murdered Ms. Hamilton. Harvey Decl. ¶ 7, Mot. **Ex. N**; Compl. ¶ 26 ("placed with an alleged first cousin whom he escaped from"). By law, "[u]pon release to an approved sponsor, a UAC is no longer in the custody of ORR." 45 C.F.R. § 410.207 (repealed). It is thus undisputed that Martinez was not in ORR custody at the time

of the murder.

This case therefore differs from the situation in the case relied upon by Plaintiff, *Texas Home Management v. Peavy*, 89 S.W.3d 30 (2002) ("*Peavy*"). Opp'n 23–24 (citing and discussing case). In *Peavy*, a care facility had an agreement with the State to provide for the care, training, and treatment of patients. *Peavy*, 89 S.W.3d at 35. While in the facility, a patient was involved in 19 assaults and seven instances of criminal conduct. *Id.* at 37. Nonetheless, the facility permitted the patient to travel to Houston to visit his mother. *Id.* at 33. While on several of these visits, the patient committed burglary, aggravated assault, shoplifting, and other criminal conduct. *Id.* During one of these home visits, the patient shot and killed the plaintiff's decedent. *Id.*

The Texas Supreme Court found in *Peavy* that the facility owed a duty of care to control the patient's behavior due to a special relationship. *Id.* at 36. Central to the Texas Supreme Court's finding was the fact that the contract between the facility and the State gave the facility the right to control the patient. *Id.* The facility, pursuant to its contract with the State and due to the fact that the patient still lived at the contractor's facility, exercised "greater than the control ordinarily exercised by a physician over a patient." *Id.* Not so here. ORR and Compass Connections exercised no control over Martinez once released to a sponsor. Martinez, unlike the patient at issue in *Peavy*, did not commit the murder

while under ORR custody or control.  Instead, the situation present here is like that in *Boren*, where the patient committed the murder after leaving the hospital's custody.  *Boren v. Texoma Med. Ctr., Inc.*, 258 S.W.3d 224, 230 (Tex. Ct. App. 2008).

Because Martinez was not in ORR's custody at the time of the murder, and because ORR does not have a special relationship with released UACs, the United States did not owe Ms. Hamilton a duty of care under Texas law.  This defeats her claims.

Plaintiff's "negligent undertaking" argument is also misguided.  Opp'n 28–29.  Under Texas law, to show a negligent undertaking, a plaintiff must show either that the defendant's negligence in performing the undertaking increased the risk of physical harm to the plaintiff or that her harm resulted from reasonable reliance on the undertaking.  *Mall v. Plunkett*, 404 S.W.3d 552, 222–56 (Tex. 2013) (per curiam).  Mere failed attempts to assist—even when negligently performed—are not a sufficient basis for imposing liability because it is "socially desirable" to encourage others to "give gratuitous aid;" thus, for example, "one who finds another in some lonely place severely wounded, unconscious, and in urgent need of first aid treatment" should be able to attempt to render assistance "without fear of liability."  Restatement (Second) of Torts § 323 cmt. b.

Here, the United States did not have any relationship with Ms. Hamilton

before the murder, did not have a special relationship with Martinez at the time of the murder, and Plaintiff relies exclusively on a general duty by the government to the public at large. *See* Opp'n 23 ("the government has a duty to ensure the safety and security of all American people"), 29 (alleging United States' actions "impacted public safety"). The government's general duty to the public does not amount to a negligent undertaking under Texas law. *See Crider v. United States*, 885 F.2d 294, 297 (5th Cir. 1989) ("Texas courts have twice considered on the merits, irrespective of official or sovereign immunity claims, whether a police officer has any tort duty to protect the public from acts of a criminal suspect. Each time, the court declined to impose any such duty.") (citations omitted). The Court therefore should dismiss Plaintiff's claims.

### E. The Court Should Reject Plaintiff's Specious Sanctions Argument.

The parties have not engaged in discovery. The United States has not failed "to produce documents or fail[ed] to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(b). The United States has not spoliated any evidence in this matter. Spoliation is "the destruction or the significant and meaningful alteration of evidence," and a court may sanction "spoliation of evidence *during discovery*." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (emphasis added). Plaintiff has not shown that any ORR records pertaining to its placement of Martinez have

been destroyed.  She has established, at most, an ongoing discussion between the House Judiciary Committee and the Department of Health and Human Services over its privacy objections to releasing its file to the Committee.  Opp'n 8.  This is not spoliation.  Nor does Plaintiff have authority to criminally prosecute the United States in this civil FTCA action.  *Id.* at 9.

## III.    CONCLUSION

For the reasons stated herein and in the United States' opening motion, this Court lacks subject matter jurisdiction over Plaintiff's FTCA claims and should dismiss this suit in its entirety.

Dated:        June 26, 2025

<div style="margin-left:40%">

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRSTEN L. WILKERSON
Director, Torts Branch

 s/ Stephen R. Terrell
STEPHEN R. TERRELL (CA Bar No. 210004)
Fed. ID No. 3906717
Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Tel:    (202) 353-1651
Fax:   (202) 616-5200
Stephen.Terrell2@usdoj.gov

</div>

*Attorneys for Defendant United States of America*

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 and not a party to this action. On June 26, 2025, I uploaded the attached document to the Court's CM/ECF System which will automatically accomplish service through the Notice of Electronic Filing on the following individuals:

Brian E. Claypool
The Claypool Law Firm
4 E. Holly St., Suite 201
Pasadena, CA  91103

Daniel L. Cox
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD  21727
*dcox@coxlawcenter.com*

*Counsel for plaintiff.*

Dated:          June 26, 2025

 s/ Stephen R. Terrell
STEPHEN R. TERRELL