United States District Court
Southern District of Texas
**ENTERED**
April 06, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TAMMY NOBLES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION No. 4:25-cv-00343** |
| | § | |
| **UNITED STATES,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## MEMORANDUM & ORDER

Before the Court is Defendant's Motion to Dismiss (ECF No. 40). On January 14, 2026, the Court held a hearing on the Motion and heard arguments of parties. Plaintiff Tammy Nobles sues the United States under the Federal Tort Claims Act ("FTCA"). Plaintiff's claims arise from the rape and murder of her daughter, Kayla Hamilton, in 2022, by Walter Javier Martinez, an Unaccompanied Minor Child ("UAC"). Plaintiff alleges that the Government's negligence in failing to fully screen Martinez caused her daughter's wrongful death.

Defendant alleges that Plaintiff's claims are barred for several reasons: first, that they are barred by the discretionary function exception to the FTCA's waiver of sovereign immunity; second, that any claims based on conduct by Compass Connections are barred by the FTCA's independent contractor exception; and third, that the United States owed no duty to Ms. Hamilton.[1]

---

[1] Because the Court finds that Plaintiff's claims are barred by the discretionary function exception, it declines to reach the issue of whether a special relationship existed between the United States and Ms. Hamilton such that it owed her a duty of care.

After considering the Motion, all responses and replies, parties' oral arguments, and the applicable law, the Court concludes that Motion should be **GRANTED**.

I.      Factual Background

On March 23, 2022, Walter Javier Martinez, a citizen of El Salvador, illegally crossed the U.S.-Mexico border into Texas, where Border Patrol processed him as a UAC. Martinez told Border Patrol that he was 16 years old and had fled gang violence in El Salvador. ECF No. 40 at 5. Border Patrol checked Martinez's biographical information for matches in the Federated Person Query 2 system that the Border Patrol uses to consult multiple federal law enforcement databases. The search did not show any "prior records or negative information." ECF No. 40 at 6.

Plaintiff alleges that Border Patrol did not lift Martinez's shirt, which would have revealed MS-13 tattoos that would have indicated Martinez's gang membership. ECF No. 1 at 3. Plaintiff also alleges that Border Patrol did not call the government of El Salvador; Plaintiff alleges that El Salvadoran officials would have confirmed Martinez's prior criminal history and MS-13 involvement. *Id.*

Because Martinez met the definition of a UAC under 6 U.S.C. § 279(g)(2), Border Patrol transferred custody of Martinez to the Department of Health and Human Service's Office of Refugee Resettlement ("ORR"). Border Patrol was required to transfer Martinez to ORR custody pursuant to 8 U.S.C. § 1232(b)(3). ECF No. 40 at 5. ORR transferred Martinez to Compass Connections, a private facility with a cooperative agreement with ORR to provide shelter and services to UACs. Compass Connections identified a sponsor for Martinez and released him with ORR approval to the sponsor, Martinez's adult cousin in Maryland.

On July 27, 2022, while released under his sponsor, Martinez (16 years old) raped and killed Kayla Hamilton (20 years old). Plaintiff asserts that her daughter's death was a result of decisions by DHS and DHHS that violated non-discretionary DHS protocols: failing to lift Martinez's shirt to visually inspect for gang tattoos, failing to call the government of El Salvador to inquire about Martinez's placement on a gang-affiliation list, and placing Martinez with a verified relative (ECF No. 1 at ¶ 8a-d). [2]

II.    Legal Standard

   A. *Motion to Dismiss*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, the Court is not required to accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

   B. *The FTCA's Waiver of Sovereign Immunity*

Subject matter jurisdiction over an FTCA claim may be barred under the discretionary function exception, 28 U.S.C. § 2680(a), which precludes liability for governmental employee actions or decisions that involve an element of choice or judgment and implicate public policy considerations. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). Congress enacted this

---

[2] Plaintiff clarified in her Response that she is not pursuing a claim for negligent training and supervision, though mentioned in the Complaint at ¶ 8.d. ECF 43 at 21. In any case, such claims are subject to the discretionary function exception. *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020).

provision to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy of an action in tort." *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984)). "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Id.* at 536. Thus, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.*

A two-part test governs the applicability of the discretionary function exception. First, courts must determine whether the act involved "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). If "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow," then the action is not discretionary. *Id.* Second, if the conduct does involve judgment or choice, courts must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 323. If the discretionary decision is grounded in social, economic, or political policy, then sovereign immunity applies and the tort claim cannot be brought under the FTCA. *Childers v. United States*, 40 F.3d 973 (9th Cir. 1994). The Supreme Court elaborated on this second prong, explaining that:

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently

collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

*Gaubert*, 499 U.S. at 325 n.7.

III.     Plaintiff's Claims Are Barred by the FTCA's Discretionary Function Exception.

Plaintiff alleges that the Border Patrol's screening of Martinez does not fall under an exception to the FTCA's waiver of sovereign immunity. Plaintiff presents two arguments in support of this position. First, Plaintiff argues that dismissal is improper at the motion to dismiss stage because "[w]ithout discovery, plaintiff has no way to know for certain that the United States did not have any policies in place governing border patrol's interactions with Martinez." ECF No. 43 at 15. In other words, Plaintiff suggests—without any factual support—that there may be some mandatory screening policy that Border Patrol failed to follow when admitting Martinez. Second, Plaintiff argues that the discretionary function exception does not apply because, under the second prong of the discretionary function test, the screening process did not involve a discretionary decision grounded in social, economic, or political policy.

A.   *Border Patrol's Screening of Martinez Was a Discretionary Action Grounded in Social and Public Policy.*

Plaintiff alleges that the United States failed to sufficiently screen Martinez for gang affiliation and criminal history. ECF No. 43 at 2. Under the first prong of the test, Plaintiff does not identify any controlling federal statute, regulation, or agency policy that prescribed a specific course of conduct for Border Patrol's screening of Martinez for gang affiliation. Defendant asserts that no such controlling policy exists. ECF No. 40 at 22.

Plaintiff responds that "[w]ithout discovery, plaintiff has no way to know for certain that the United States did not have any policies in place governing border patrol's interactions with Martinez." ECF No. 43 at 15. However, a plaintiff seeking discovery must allege "enough facts to raise a reasonable expectation that discovery will reveal" the evidence he seeks. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Additionally, when an exception to the FTCA waiver of sovereign immunity is at issue, Plaintiff bears the burden to prove that jurisdiction exists. *Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018). Plaintiff provides no evidence whatsoever suggesting that there is some kind of hidden, mandatory internal policy governing screening. Plaintiff's record evidence from an investigation by the House Judiciary Committee does not identify any specific, mandatory regulation or policy that would have required Defendant to check for gang tattoos or call the government of El Salvador when screening Martinez. *See generally* ECF No. 43-1, Exh. A. Therefore, the Court finds that the screening was discretionary.

Under the second prong of the test, the discretionary screening process involves social, economic, or political policy. "'[D]ecisions on when, where, and how to investigate and whether to prosecute' have long been found to be core examples of discretionary conduct for which the United States maintains its immunity." *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016) (citation omitted). This applies both to criminal law enforcement and to officials enforcing immigration laws. *Id.* Plaintiff argues that the screening process is a "'fairly routine' interaction" that should be viewed as a "matter of professional judgment" of a kind "rarely considered to be susceptible to social, economic, or political policy." ECF No. 43 at 16.

However, this Court sees no reason to draw a distinction between the kind of judgment-based screening process at issue here and the other decisions made by law enforcement in the process of conducting investigations, which courts have found to be covered by the discretionary

6 of 10

function exception. *See, e.g.*, *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006) (finding criminal activity by FBI agents during an undercover investigation to be covered by the exception); *Dichter-Mad Fam. Partners, LLP v. United States*, 709 F.3d 749 (9th Cir. 2013) (affirming the district court's finding that law enforcement's failure to discover and prosecute a Ponzi scheme was covered by the discretionary function exception).

Plaintiff argues that Defendant's decisions concerned public safety and therefore are not covered under the discretionary function exception. However, these arguments primarily focus on "the decision on whether to allow Martinez to enter the United States," not the process for screening Martinez upon entry. ECF No. 43 at 16. Plaintiff's response to Defendant on the screening issue concludes that "the United States should never have released [Martinez]." ECF No. 43 at 19.

Defendant argues that "allegedly mandatory and specific investigative steps for gang affiliation of a UAC (there are none) are irrelevant if the ultimate decision to release Martinez to a sponsor rather than securely detain him is subject to the discretionary function exception." ECF No. 40 at 22. The Court agrees. Had Martinez's gang affiliation been discovered during screening, Border Patrol would still have processed Martinez as a UAC and transferred him to ORR custody. ORR's decision to approve the release of Martinez would still be a discretionary decision. The fact that they may have made a different decision with more information about Martinez's criminal history in El Salvador does not impact the discretionary function analysis. Because the ultimate release decision was discretionary, Plaintiff cannot sustain an FTCA claim for Border Patrol's screening.

The actual cause of Plaintiff's harm seems to be Martinez's release. Plaintiff disagrees with the way Martinez was screened, but this does not clearly have a causal relationship to the murder of her daughter. In any case, that screening is barred by the discretionary function exception, as explained above. Therefore, the ORR decision to release Martinez from custody is the more appropriate government action to analyze.

*B. ORR's Decision to Release Martinez from Custody Was a Discretionary Action Grounded in Social and Public Policy.*

Because Martinez fit the UAC definition under 6 U.S.C. § 279(g)(2), Border Patrol was required to transfer Martinez to ORR custody under 8 U.S.C. § 1232(b)(3). "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *Gaubert*, 499 U.S. at 324. Therefore, Defendant is shielded from liability for transferring Martinez to ORR. Plaintiff appears to argue that the transfer was done negligently. ECF No. 43 at 19. However, Border Patrol clearly followed the letter of the statute.

Plaintiff alleges that the United States negligently allowed Martinez to enter the country, rather than placing him in a secure facility. ECF No. 43 at 16, 19. However, this decision, too, is covered by the FTCA's discretionary function exception.

Under the first prong of the test, the decision to release Martinez was discretionary. 8 U.S.C. § 1232(c)(2)(A) requires that UACs "shall be promptly placed in the least restrictive setting that is in the best interest of the child. In making such placements, the Secretary may consider danger to self, danger to the community, and risk of flight . . . A child shall not be placed in a secure facility absent a determination that the child poses a danger to self or others or has been

charged with having committed a criminal offense." Under ORR regulations in effect at the time, the decision to place a child in a secure facility was a discretionary one. All relevant regulations provided a list of factors to consider; if any of those factors were present, ORR regulations permitted, not required, placement in a secure facility. 45 C.F.R. § 410.203; ORR Children Entering the United States Unaccompanied § 1.2.4 (Feb. 22, 2021). The decision to release a child to a sponsor is similarly discretionary. Children Entering the United States Unaccompanied § 2.2.1 (June 7, 2021). Therefore, the decision was discretionary.

Under the second prong of the test, the Court finds that the discretionary placement process involved social, economic, or political policy. Plaintiff argues that this was a "government decision[] made for public safety" that did not involve social, economic, and political policy. ECF No. 43 at 14. Plaintiff points to several cases that are not analogous, and Plaintiff fails to address the policy direction provided in the relevant statute.

As Defendant argues, "[i]n the applicable statute, Congress set forth a policy preference to place UACs in 'the least restrictive setting that is in the best interest of the child; and cabined ORR's discretion to place UACs in a secure facility to situations where ORR makes 'a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense.'" ECF No. 44 at 5 (quoting 8 U.S.C. § 1232(c)(2)(A)). Children Entering the United States Unaccompanied § 2.2.1 (June 7, 2021) provides for sponsorship decisions that are based on a policy of "promot[ing] public safety and ensur[ing] that sponsors are able to provide for the physical and mental well-being of children." These are policy considerations, not mere safety, medical, or scientific considerations (as in the cases Plaintiff cited).

The Fifth Circuit has held that "[i]f the government's discretion is 'grounded in the policy of the regulatory regime,' the decision is immune under the [discretionary function exception], even if it also may entail application of scientific principles." *In re Katrina Canal Breaches Litigation*, 696 F.3d 436, 451 (5th Cir. 2012) (citation omitted). ORR's discretion in releasing Martinez to a sponsor was based on the relevant statutory and regulatory policy goals; therefore, the discretionary function exception applies. Such a finding comports with common sense, since it would yield absurd results to find that the United States is liable in tort for all crimes committed by UACs admitted into the country under the supervision of a relative.

IV.     Plaintiff's Remaining Arguments Are Unavailing.

Plaintiff makes a series of arguments regarding the United States being subject to civil and criminal penalties for spoilation of evidence. ECF No. 43 at 7. These arguments arise from disputes about documents at issue in the House Judiciary Committee investigation. These proceedings are irrelevant to the case and motion before this Court, and the Court has no jurisdiction to impose sanctions of any kind for conduct that occurred outside the scope of the instant case.

For these reasons, Defendant's Motion to Dismiss is **GRANTED**.

Signed at Houston, Texas on March 31, 2026.

_____
Keith P. Ellison
United States District Judge